IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Case No. 3:23-cv-00006-L-BT |
| | § | |
| JOHN DEE STACEY, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

On January 3, 2025, the undersigned magistrate judge held a hearing on Plaintiff's Motion for Order to Show Cause (ECF No. 125), requesting the Court find Defendant John Dee Stacey in contempt of the August 16, 2024 Order (ECF No. 114) appointing a receiver to sell certain real property (the "Property") to satisfy a portion of the judgment owed by Mr. Stacey to the United States. Specifically, Plaintiff asserts in its Motion that "[Mr.] Stacey's contempt in this case was making threatening and disturbing phone calls and text messages to Brenda Sandoz, the Receiver's assistant realtor working on the sale of [the Property.]" Mot. 6. (ECF No. 125). Plaintiff requests that if the Court finds Mr. Stacey in contempt that it have him incarcerated until the Property sells.[1] *Id.* For the reasons stated, the District Judge should find Mr. Stacey in civil contempt and order him to pay the

---

[1] The sale of the Property is scheduled to close on January 14, 2025.

Receiver, Allie Beth Allman, $500 to compensate the Receiver for his violation of the August 16 Order.[2]

## Background

The United States filed this civil action on January 3, 2023, as part of its efforts to collect past due income taxes from Mr. Stacey. On October 11, 2023, the District Judge entered an Agreed Judgment (ECF No. 96) in Plaintiff's favor against Mr. Stacey and others, including ARTS Investments, LLC (the "Stacey Defendants"), that Mr. Stacey owes the United States more than $3.7 million for tax years 1995, 1997-2003, and 2008.[3] Among other things, the Judgment grants Plaintiff the right to sell the Property—a mobile home park located in Grand Prairie, Texas—to collect a portion of the outstanding tax liability reduced to judgment. *See* Agreed. J. 7. ARTS Investments, LLC is the record owner of the Property. However, the Court determined that ARTS Investments, LLC is Mr. Stacey's alter ego or nominee and that Mr. Stacey is the true owner of all assets titled to ARTS Investments, LLC or in which ARTS Investments, LLC has an interest, regardless of record title. *Id.* at 2. No party appealed the Judgment, and the Judgment is now final.

---

[2] At Plaintiff's request, the undersigned advised Stacey of his option, under 28 U.S.C. § 636(c), to consent to have the magistrate judge enter a final order on the Motion for Order to Show Cause. Stacey declined to consent. Thus, the undersigned offers these findings, conclusions, and recommendation for the District Judge's consideration.

[3] The Agreed Judgment resolved all of Plaintiff's claims except for those claims against Emma Stanley, Mr. Stacey's ex-wife, which are the subject of pending cross-motions for summary judgment.

2

On August 16, 2024, the undersigned appointed realtor Allie Beth Allman as Receiver to facilitate the sale of the Property. Order (ECF No. 114). The Court also ordered Plaintiff to provide notice of the entry of the August 16 Order to Mr. Stacey, through his counsel of record by email and by posting a copy of the Order at the Property. *Id.* Thereafter, the Court permitted Attorney Jason B. Freeman, to withdraw as counsel for Mr. Stacey, but not as counsel for ARTS Investments LLC.[4] *See* Order (ECF No. 126).

The Receiver listed the Property for sale on September 2, 2024 at $1,893,000—the Dallas County tax-assessed value of the Property. *See* Mot. 2-3 (ECF No. 125). But after the Receiver learned that a formal appraisal valued the Property at only $890,000, the Receiver reduced the listing price to $915,000. *Id.* On or about November 4, 2024, the Receiver received an offer from Manjusha Nandamudi to purchase the Property for $750,000—the only written offer the Receiver has received for the Property. *Id.* On November 21, 2024, Plaintiff filed a motion (ECF No. 123) to approve the sale of the property to Ms. Nandamudi. The next day, Brenda Sandoz, the Receiver's assistant realtor and listing agent for the Property, notified Plaintiff's counsel that she had received "threatening telephone calls" and "disturbing text messages" from Mr. Stacey demanding that the Receiver sell the Property to someone other than Ms. Nandamudi. Mot. 3 (ECF No. 125). On

---

[4] Mr. Freeman's motion to withdraw as counsel for ARTS Investments, LLC (ECF No. 135) is still pending before the Court.

November 27, 2024, the Court approved the sale to Ms. Nandamudi. Order (ECF No. 127).

The August 16 Order appointing the Receiver includes the following directive:

> Defendant John Dee Stacey, ARTS Investments, LLC, their tenants, associates, agents, employees, and all other persons acting in concert with any of them, or on their behalf, are ordered to cooperate with the Receiver in her marketing and sale of the Real Property; and are immediately hereby restrained and enjoined from damaging, vandalizing, removing any fixture and/or structure, and/or interfering in any way with the Real Property, mortgaging or causing liens to be filed against the Real Property, interfering with the Receiver, interfering with the Receiver's efforts to comply with her obligations under this Order, interfering in any way with the enforcement of this Order; and/or interfering with any prospective purchaser or his or her realtor or agent.

Order 3 (ECF No. 114). Accordingly, Plaintiff filed its Motion for Order to Show Cause asking the Court to determine whether Mr. Stacey should be held in contempt for violating the August 16 Order by making "threatening and disturbing phone calls and text messages" to Ms. Sandoz. Mot. 1 (ECF No. 125)

On January 3, 2025, the undersigned held a hearing to determine whether Mr. Stacey should be held in contempt. *See* Show Cause Order (ECF No. 129); Min. Entry (ECF No. 143). Mr. Stacey, proceeding *pro se,* appeared as required, and Mr. Freeman appeared for ARTS Investments, LLC. Plaintiff's counsel appeared as well. At the hearing, Plaintiff presented evidence through witnesses—including Ms. Sandoz—and exhibits. Mr. Stacey testified on his own behalf. At the conclusion of the hearing, the undersigned read the August 16 Order to Mr. Stacey and

4

admonished him of his continuing obligations under the Order. Mr. Stacey confirmed that he understood the Order and the consequences for violating it.

## Legal Standards

A contempt proceeding is characterized based on its primary purpose. "If the purpose of the sanction is to punish the contemnor and vindicate the authority of the court, the order is viewed as criminal." *In re Bradley*, 588 F.3d 254, 263 (5th Cir. 2009) (citing *Lamar Fin. Corp. v. Adams*, 918 F.2d 564, 566 (5th Cir. 1990)). On the other hand, "if the purpose of the sanction is to coerce the contemnor into compliance with a court order, or to compensate another party for the contemnor's violation, the order is considered purely civil." *Id*. The remedies assessed can also help to characterize the proceeding. "If the [imprisonment] is conditional and coercive, the character of the contempt is civil; if it is backward-looking and unconditional it is criminal." *Id*. (citing *Shillitani v. United States*, 384 U.S. 364, 366 (1966)). And "a lump sum fine that punishes past conduct is criminal, while a fine that accrues on an ongoing basis in response to noncompliance is civil." *Id*. (citations omitted).

"A party commits contempt when he violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Waste Mgmt. of Wash., Inc. v. Kattler*, 776 F.3d 336, 341 (5th Cir. 2015) (quoting *Hornbeck Offshore Servs., L.L.C. v. Salazar*, 713 F.3d 787, 792 (5th Cir. 2013). To hold a party in criminal contempt, the court must find evidence that proves such a violation beyond a reasonable

5

doubt. *United States v. Croft*, 2024 WL 4371631, at *2 (W.D. Tex. Aug. 21, 2024) (citing *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 824 (1994)), adopted by 2024 WL 4346377 (W.D. Tex. Sept. 26, 2024). The criminal contempt statute empowers the Court to punish—by fine or imprisonment, or both—the "disobedience or resistance to its lawful writ, process, order, rule, decree, or command." 18 U.S.C. § 401(3). "Punishment for [criminal] contempt requires certain procedures to protect the constitutional rights of the subject of the contempt proceeding, such as notice and trial by jury, and is governed by the Federal Rules of Criminal Procedure." *Croft*, 2024 WL 4371631, at *1 (citing *United States v. Rizzo*, 539 F.2d 458, 463 (5th Cir. 1976) and Fed. R. Crim. P. 42(b)). "[T]he Supreme Court has counseled that [this Court] should utilize criminal sanctions only if the civil remedy of contempt is deemed inadequate." *Id.* (citing *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 801 (1987)).

On the other hand, to hold a party in civil contempt, the court need only find a violation by clear and convincing evidence.[5] *Waste Mgmt.*, 776 F.3d at 341 (quoting *Hornbeck*, 713 F.3d at 792). Further, for civil contempt, "[t]he contemptuous actions need not be willful so long as the contemnor failed to comply with the court's order." *Id.* at 341 (quoting *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 581 (5th Cir. 2000)). The "movant in a civil contempt proceeding

---

[5] Evidence is clear and convincing if it "produces in the mind of the trier of fact a firm belief . . . so clear, direct and weighty and convincing as to enable a fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case." *Hornbeck*, 713 F.3d at 792 (citation omitted).

6

bears the burden of establishing by clear and convincing evidence 1) that a court order was in effect, 2) that the order required certain conduct by the respondent, and 3) that the respondent failed to comply with the court's order." *Am. Airlines*, 228 F.3d at 581 (quoting *Martin v. Trinity Indus., Inc.*, 959 F.2d 45, 47 (5th Cir. 1992)). "Good faith is not a defense to civil contempt; the question is whether the alleged contemnor complied with the court's order." *Chao v. Transocean Offshore, Inc.*, 276 F.3d 725, 728 (5th Cir. 2002) (citation omitted).

## Analysis

In this case, Plaintiff seemingly moves for criminal contempt by referencing 18 U.S.C. § 401, the criminal contempt statute, *see* Mot. 5 (ECF No. 125), and representing that it seeks to punish Mr. Stacey—by having him incarcerated—for past conduct. However, "the word 'punishment' as used in contempt cases is ambiguous and not indicative that the contempt is criminal." *Orr v. Bowles*, 2002 WL 1033092, at *5 (N.D. Tex. May 20, 2022) (citing *United States v. United Mine Workers*, 330 U.S. 258, 297 n. 64 (1947)). To the extent that Plaintiff sought a proceeding criminal in nature, it has not satisfied the high burden to justify criminal contempt, shown that a civil contempt remedy would be inadequate, or invoked procedures necessary to protect Mr. Stacey's constitutional rights. *See Waste Mgmt.*, 776 F.3d at 340-41 ("due process requires that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses."

7

(internal quotations and citation omitted)). Mr. Stacey appeared at the hearing and represented himself. Plaintiff did not ask the Court to empanel a jury, appoint an attorney to represent Mr. Stacey, or admonish Mr. Stacey of his right against self-incrimination under the Fifth Amendment. Plaintiff's Motion—and the Court's resulting Show Cause Order—was inadequate notice to inform Mr. Stacey that he could be charged with *criminal* contempt. Plaintiff introduced additional instances of alleged contempt at the January 3 hearing that were not described in its Motion and of which Mr. Stacey did not have adequate notice.

Further, the Court finds that civil contempt is an adequate remedy for the violations of the August 16 Order identified in Plaintiff's Motion. And it is is within the Court's discretion to invoke civil contempt. *See Croft*, 2024 WL 4371631, at *2 (citing *United States v. Wilson*, 421 U.S. 309, 319 (1975)). Accordingly, the District Judge should limit his consideration of Plaintiff's Motion to the extent it seeks a civil contempt remedy.

As a preliminary matter, the Court should find that Mr. Stacey had knowledge of the August 16 Order. Though Mr. Stacey denied that he ever received or read the order, his testimony on that subject was wholly incredible. Mr. Stacey's counsel at the time, Mr. Freeman, testified that he received the August 16 Order through the Court's electronic case filing (ECF) system and by email from Plaintiff's counsel—as required by the Order. Mr. Freeman further testified that he "believe[s] he did" forward the order to Mr. Stacey. Mr. Freeman also admitted that he complied with all his ethical obligations to his client. A lawyer has an ethical

obligation to keep his client reasonably informed about the status of a matter. *See, e.g.,* TDRPC Rule 1.03(a). Additionally, Plaintiff adduced evidence that it served a copy of its Motion to Show Cause (ECF No. 125) and the Show Cause Order (ECF No. 129), both referencing the August 16 Order, on Mr. Stacey at two different addresses by U.S. Mail and FedEx and to two of his known email addresses. *See* Proof of Serv. (ECF No. 132). Mr. Stacey testified that even though he is not tech-savvy, he employs an assistant who regularly checks his email for him and sends him important documents. He also testified that he is fully reachable by landline and cell phone and is familiar using text messages to receive and review documents from attorneys.

Mr. Stacey testified that he has dyslexia but did not present any corroborating evidence for this claim. Nor did he testify that his dyslexia prevented him from understanding any Court order, including the August 16 Order. Mr. Stacey complied with the Show Cause Order and appeared in person at the January 3 hearing. And at the hearing, the undersigned observed Mr. Stacey review the documents proffered to him by Plaintiff's counsel. Accordingly, the Court finds that Mr. Stacey had knowledge of the August 16 Order.

The Court next addresses whether Plaintiff has established, by clear and convincing evidence, (1) that a court order was in effect; (2) that the order required certain conduct by Mr. Stacey; and (3) that Mr. Stacey failed to comply with the court's order. *See, e.g. United States v. City of Jackson, Miss.*, 359 F.3d 727, 731 (5th Cir. 2004). The Court finds that Plaintiff met this burden.

9

First, a court order—the August 16 Order—was in effect. Second, it required certain conduct by Mr. Stacey. Mr. Stacey was clearly prohibited from interfering in any way with the Property, the Receiver's efforts to sell the Property, or any prospective purchaser. Third, Mr. Stacey's conduct constitutes interference in violation of the court order.

Mr. Stacey did not deny sending the texts to Ms. Sandoz that are described in Plaintiff's Motion. And while the undersigned does not agree with the characterization of the tone or content of those communications as "threatening" or "disturbing," the evidence established that his communications interfered with the Receiver's efforts to sell the Property because he insisted that Ms. Sandoz consider a competing offer that never came—after the Court had approved the sale of the Property to Ms. Nandamudi—and he suggested he would "file a motion with the court . . . and stop everything" and "fil[e] Bankruptcy . . . to stop everything." Mot. 4.

Mr. Stacey's communications interfered with the Receiver's efforts to sell the Property, in that Ms. Sandoz incurred additional time and expense reviewing and responding to purported offers that never came to fruition. And Ms. Sandoz had to report Mr. Stacey's communications to the Receiver, who in turn communicated them to Plaintiff's counsel. Both Ms. Sandoz and the Receiver appeared at the hearing and testified. The Court finds that $500 is a reasonable sum that would compensate the Receiver and Ms. Sandoz for the inconvenience caused by Mr. Stacey's contemptuous conduct.

At the January 3 hearing, Plaintiff introduced witness testimony and documentary evidence of additional instances of alleged contempt not briefed in the Motion to further argue interference with the receivership.[6] Plaintiff also generally argued that Mr. Stacey's failure to respond to the Plaintiff's discovery requests interfered with the August 16 Order because it hampered the Receiver's ability to get information about income earned from the Property and better market the Property. During his own testimony, Mr. Stacey made remarks about the Property (that it had sewage problems and the current residents of the trailer park are gang members), which Plaintiff argued was a real-time attempt to harm the sale. Mr. Stacey also stated that his lawyers told him he should file for bankruptcy and alluded to this potential avenue as his only option. The Court should decline to consider these additional instances of alleged contempt as they

---

[6] Additional instances of alleged contempt offered by Plaintiff included:

(1) Mr. Stacey having other individuals contact Ms. Sandoz about potential purchases on his behalf when no offer was ever reduced to writing besides the court-approved offer;

(2) Mr. Stacey having the adjoining landowner Steven Harris, through his stepson Anthony Jakab, threaten to file an encroachment lawsuit to tie up the sale of the property and Mr. Jakab attempting to communicate this boundary issue to potential buyers;

(3) Mr. Stacey having Mario Tadillo contact Ms. Sandoz to attempt to have the court-approved buyer flip the property to him or his partner after closing; and

(4) Mr. Stacey putting both Ms. Sandoz and Ms. Notinger in fear for their personal safety.

were not described in Plaintiff's motion and Mr. Stacey did not have fair notice that allegations of such conduct would be the subject of the contempt hearing.

In sum, the Court should find that Mr. Stacey violated the August 16 Order and should be held in civil contempt for his violation. The Court finds that a $500 sanction, payable to the Receiver, is appropriate and would compensate the Receiver and Ms. Sandoz for the inconvenience caused by Mr. Stacey's contemptuous conduct.

## Recommendation

For the reasons stated, the District Judge should find Mr. Stacey in civil contempt of Court and order Mr. Stacey to pay a $500 sanction to the Receiver.

**SO RECOMMENDED**.

January 10, 2025.

                                              REBECCA RUTHERFORD
                                              UNITED STATES MAGISTRATE JUDGE

## **INSTRUCTIONS FOR SERVICE AND**
## **NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district judge, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).