IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 3:23-cv-00006-L-BT |
| JOHN DEE STACEY, *et al.*, | § § § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

In this federal tax collection suit, Plaintiff the United States of America and Defendant Emma Stanley seek a determination as to whether Emma Stanley is entitled to 50 percent of the net proceeds from the sale of certain real property located in Grand Prairie, Texas (the "Grand Prairie property"). As set forth below, there is no genuine dispute that the "duty of consistency" estops Emma Stanley from claiming an interest superior to that of Plaintiff in Defendant ARTS Investments LLC ("ARTS"), the former record owner of the Grand Prairie property, or in the property itself. Thus, the District Judge should GRANT Plaintiff's Motion for Summary Judgment (ECF No. 107), DENY Defendant's Motion for Summary Judgment (ECF No. 111), and ORDER that the remaining net proceeds from the sale of the Grand Prairie property—which have been deposited into the registry of the Court—be awarded to Plaintiff as partial payment of the federal tax debt owed by Emma Stanley's ex-husband, Defendant John Dee Stacey.

1

## Background[1]

John Dee Stacey ("John") is indebted to Plaintiff for federal income tax for the tax years 1995, 1997–2003, and 2008. *See* Agreed J. 1-2 (ECF No. 96).

Emma Marie Stanley ("Emma") married John in July 2000, Pl.'s App. 35, Ex. 6 (ECF No. 109), and, thereafter, the couple lived together in Arizona, Def.'s App. 135. In April 2004, the couple formed ARTS and registered the entity as an Arizona limited liability company, naming John and Emma as managers of ARTS. Pl.'s App. 96, Ex. 12. The next month, ARTS purchased the Grand Prairie property, a mobile home park, the net proceeds from the sale of which is the subject of the cross-motions for summary judgment before the Court. Pl.'s App. 97–99, Ex. 13.

John and Emma entered into divorce proceedings in Florida in 2007. Pl.'s App. 104–107, Ex. 15. Their divorce was finalized in 2011, but the divorce court retained jurisdiction over the division of the couple's property, assets, and liabilities until June 2024. Pl.'s App. 120–122, Ex. 17.

In 2015, the IRS sent Emma notices of deficiency for more than $1 million in unpaid income tax and associated penalties for tax years 2000–2003. Pl.'s App. 156; 161–67, Ex. 20. Emma subsequently petitioned the Commissioner of the IRS, claiming that she was an innocent spouse under 26 U.S.C. §§ 6015(a)-(c) or (f) and

---

[1] As both sides move for summary judgment, the Court sets forth the undisputed facts, and, when it is necessary to set out evidence that is contested, does so favorably to the side who is the summary judgment nonmovant in the context of that evidence. *See Hall Arts Ctr. Off., LLC v. Hanover Ins. Co.*, 327 F. Supp. 3d 979, 987 n.1 (N.D. Tex. 2018).

66(b) or (c) and did not owe income tax penalties on community income for the years she was married to John, including the years 2000–2003. Pl.'s App. at 155–69.

In 2016, in support of her request for innocent spouse relief, Emma submitted a sworn IRS Form 8857, in which she represented she had no assets. Pl.'s App. 192–201, Ex. 21. The IRS later granted Emma the requested innocent spouse relief and relieved her of the income tax deficiencies, except for $400. *Id.* at 202–03, Ex. 22; Def.'s Brief 9–10 (ECF No. 112).

Plaintiff filed this civil action in 2023, as part of its efforts to collect past due income taxes from John. *See generally* Compl. (ECF No. 1). On October 10, 2023, the District Judge entered an Agreed Judgment in Plaintiff's favor against John, awarding Plaintiff more than $3.7 million for tax years 1995, 1997–2003, and 2008. *See* Agreed J. (ECF No. 96). Among other things, the Agreed Judgment—now final—provides that ARTS is John's alter ego or nominee and that John is the true owner of all assets titled to ARTS or in which ARTS has an interest, regardless of record title, including the Grand Prairie property. *Id.* at 2. The Agreed Judgment further granted Plaintiff the right to sell the Grand Prairie property to collect against the outstanding tax liability reduced to judgment. *Id.* at 7. The Agreed Judgment also allowed this Court to later determine Emma's interest, if any, in the Grand Prairie property. *Id.* at 6.

The Florida divorce court entered a "Final Judgment on the Reserved Issues" on June 27, 2024. Pl.'s App. 128–154, Ex. 19. This judgment recited that

3

"[d]uring [John and Emma's] marriage, they started a company called [ARTS] and . . . [o]n or about May 28, 2004, [ARTS] purchased [the Grand Prairie property]." Pl.'s App. 130, Ex. 19. Contrary to the Agreed Judgment, the divorce court's judgment determined John and Emma "each . . . owned a one-half (1/2) interest in [ARTS]" and awarded John and Emma each one-half interest in ARTS, and its holdings, including the Grand Prairie property. *Id.* The divorce court further ordered "[John] shall be responsible for any and all federal tax debt accumulated prior to the separation of the parties through the date of the Final Hearing." *Id.*

On November 27, 2024, this Court approved the sale of the Grand Prairie property by the court-appointed receiver for $750,000. Order (ECF No. 127). The sale closed on January 14, 2025, and, pursuant to the Court's Order, half of the net proceeds—representing John's undisputed interest in the Property—were paid to Plaintiff and the other half were deposited in the registry of the court pending the resolution of Plaintiff and Emma's cross-motions for summary judgment. *See* Order (ECF No. 151); Notice of Closing (ECF No. 152).

In its Motion for Summary Judgment (ECF No. 107), Plaintiff argues that Emma is estopped by the duty of consistency from asserting any interest in ARTS or the Grand Prairie property because she disclaimed any alleged ownership interest in either when seeking innocent spouse relief to avoid paying the income tax liability she owed for the years during her marriage to John. Pl.'s Mot. Summary J. 4 (ECF No. 107). Plaintiff contends that because Emma's sworn financial statement led to the IRS excusing her from her tax liabilities, except for

4

$400, and the time for the IRS to reimpose and assess those tax liabilities has expired, the duty of consistency estops Emma from presently claiming any interest in ARTS or any property titled to ARTS. *Id.* Alternatively, Plaintiff argues that even if the duty of consistency did not apply, the United States is entitled to enforce its tax liens against 100 percent of ARTS and the Grand Prairie property under Texas community property law, as the community property was solely managed by John or jointly managed by the couple. *Id.*; Pl.'s Brief 12. Lastly, Plaintiff argues that the United States' liens attached to ARTS, and the Grand Prairie property cannot be divested by a Florida divorce court's later allocation of the property. Pl.'s Brief 14-15 (ECF No. 108). Plaintiff asserts that it is entitled to summary judgment against Emma and that 100 percent of the net proceeds from the sale of the Grand Prairie property should be awarded to the United States for partial payment of John's remaining federal tax debt. Pl.'s Brief 20 (ECF No. 108).

In her Motion for Summary Judgment against the United States (ECF No. 111), Emma argues that because the Grand Prairie property was acquired during her marriage to John, it is subject to Arizona's community property law, which mandates an equitable division of community property.[2] Def.'s Brief 4 (ECF No. 112). Alternatively, Emma argues that because ARTS's operating agreement does

---

[2] Emma argues that Arizona law governs the community property disposition because the couple was domiciled there throughout their marriage, including at the time of the purchase of the Grand Prairie property. Def.'s Brief 4, 11–13. However, she also contends that the result would be the same if Texas law governed the issue. Def.'s Resp. 12 (ECF No. 116).

not provide for asset division, the Arizona Limited Liability Company Act entitles her to distributions according to the LLC's members' ownership interests in the LLC. *Id.* And lastly, Emma argues that the 2024 Florida divorce court judgment recognizing her fifty percent ownership interest in ARTS precludes Plaintiff from contesting her entitlement to those proceeds under principes of res judicata. *Id.*

Both parties filed responses and replies for each respective motion. *See* ECF Nos. 116, 117, 118, and 119. Thus, the motions are ripe for determination.

**Legal Standards**

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all factual controversies in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak*

7

*v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

## Analysis

Plaintiff is entitled to summary judgment because there is no genuine dispute that the duty of consistency estops Emma from now claiming an interest in ARTS or the Grand Prairie property after claiming she had no assets on a sworn IRS Form 8857 filed in 2016.

The duty of consistency is a "type of estoppel developed in tax cases, known as 'quasi-estoppel.'" *Herrington v. C.I.R.*, 854 F.2d 755, 757 (5th Cir. 1988). The doctrine "prevents a taxpayer from taking one position one year, and a contrary position in a later year, after the limitations period has run in the first year." *Id*. The doctrine has three elements: "(1) a representation or report by the taxpayer; (2) on which the Commission has relied; and (3) an attempt by the taxpayer after the statute of limitations has run to change the previous representation or to characterize the situation in such a way as to harm the Commissioner." *Id.* at 758. "If this test is met, the Commissioner may act as if the previous representation, on which he relied, continued to be true, even if it is not. The taxpayer is estopped to assert the contrary." *Id*. The doctrine "does not apply when the inconsistency

concerns a pure question of law and both the taxpayer and the Commissioner had equal access to the facts." *Id.*

"While it is true that many of the cases in which the duty of consistency is applied involve inconsistent representations made by taxpayers on their returns for different tax years, the duty is flexible and has been applied in other similar situations." *United States v. Jones*, 2011 WL 5166402, at *10 (N.D. Tex. Nov. 1, 2011); *see also United States v. Holmes*, 693 Fed. Appx. 299, 302–03 (5th Cir. 2017) (unpublished) (holding that the duty of consistency bound taxpayers to their request for collection due process hearing, with respect to tax lien against their property for unpaid estate taxes, which suspended the statute of limitations on IRS's collection lawsuit, so that taxpayers could not later deny that the IRS received their request for hearing). In applying the basic principles of equity, the duty of consistency applies here. *See Magee v. United States*, 282 U.S. 432, 434 (1931) ("The taxpayer benefited by the claim and is not in a position to contest its legality.").

It is Plaintiff's burden to prove the elements of the duty of consistency beyond peradventure, and Plaintiff has met this burden. First, there is no genuine dispute that, in 2016, in support of her request for innocent spouse relief, Emma represented on her sworn IRS Form 8857 that she had no assets. Pl.'s App. 195, Ex. 21 (ECF No. 109). Specifically, IRS Form 8857 Part IV provides the following instruction: "Tell us about your assets. Your assets are your money and property. Property includes real estate, motor vehicles, stocks, bonds, and other property

9

that you own" and "list the amount of cash you have on hand and in your bank accounts." Pl.'s App. 195, Ex. 21 (ECF No. 109). In response to this inquiry, Emma failed to identify any potential interest in ARTS or the Grand Prairie property. *See id.* Emma left Part IV completely blank and listed *no* assets. *See id.* Second, there is no dispute that the Commissioner granted Emma's request for innocent spouse relief based on her petition and supporting Form 8857 and relieved her of more than $1 million in tax debt. *Id.* at 205, Ex. 22; Def.'s App., Ex. 14. And third, there is no dispute that Emma now, after the statute of limitations has run,[3] attempts to change her previous representation or recharacterize her situation in such a way as to harm the IRS—by asserting a fifty percent ownership interest in ARTS that entitles her to $303,141.15 from the sale of the Grand Prairie property.

Emma argues that the duty of consistency should not prevent her claim to the remaining net proceeds from the sale of the Grand Prairie property because, when she signed the Form 8857 in 2016, she was "truly destitute" and she "lacked access to relevant asset information" as a result of John's abuse. Def.'s Resp. 8–9. She further argues that Plaintiff failed to meet its summary judgment burden as to the element of reliance because there is no conclusive evidence as to what the

---

[3] Under 26 U.S.C. § 6501(a), "the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed . . . or, if the tax is payable by stamp, at any time after such tax became due and before the expiration of 3 years after the date on which any part of such tax was paid, and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period." Emma filed income tax returns for the 2000–2003 tax years more than six years ago, so the time for the IRS to reimpose and assess those taxes has expired.

Commissioner relied on in granting her request for innocent spouse relief and Plaintiff's "conclusory conclusions and implications for the reasons [she] was granted innocent spouse relief are nothing but speculative conjecture." Def.'s Resp. 8, 10.

The first argument is inapposite. It is not material to the application of the duty of consistency why Emma represented to the IRS that she had no assets or whether that representation was true.[4] What matters is whether the taxpayer made a representation. And, here, it is undisputed that Emma represented on her 2016 Form 8857 that she had no interest in ARTS or the Grand Prairie property—or any other property or assets.

The second argument fails as well. Contrary to Emma's assertion, Plaintiff is not required to provide "concrete evidence or documentation" that "the IRS relied *exclusively* on [Emma's] financial disclosures in granting [Emma] relief." Def.'s Resp. 11 (emphasis added). 26 U.S.C. § 66 "offers two types of relief to a requesting spouse—traditional and equitable." *Wheeler v. Comm'r.*, 2021 WL 5834389, at *3

---

[4] For this reason, the Court does not consider record evidence tending to show that Emma was not destitute and in fact had some knowledge about potential assets—including the Grand Prairie property—when she signed the Form 8857. Pl.'s App. at 111-112, Ex. 16 (Emma's August 3, 2007 financial affidavit filed in the couple's divorce case claiming a half interest in the Grand Prairie property valued at $1 million, a half interest in the couple's Arizona home valued at $2.5 million, a half interest in another mobile home park valued at $800,000, a half interest in a Cadillac valued at $66,110, and a half interest in $10 million in cash); *id.* at 96, Ex. 10 (evidence that Emma was awarded $162,570.56 from the sale of the Arizona home on May 2, 2016—thirteen days before she signed and submitted her Form 8857).

(T.C. 2021). Traditional relief is available under § 66(c) when: (1) "[t]he requesting spouse did not file a joint Federal income tax return for the taxable year for which he or she seeks relief;" (2) "[t]he requesting spouse did not include in gross income for the taxable year an item of community income properly includible therein which, under the rules contained in section 879(a), would be treated as the income of the nonrequesting spouse"; (3) "[t]he requesting spouse establishes that he or she did not know of, and had no reason to know of, the item of community income"; and (4) "[t]aking into account all of the facts and circumstances, it is inequitable to include the item of community income in the requesting spouse's individual gross income." *Id.* (citing Treas. Reg. § 1.66-4(a) (2003)). Equitable relief is available under § 66(c) when the requirements of traditional relief are not satisfied, "but it would be inequitable to hold the requesting spouse liable for the unpaid tax or deficiency." Treas. Reg. § 1.66-4(b) (2003). Factors relevant to whether it would be inequitable to hold a requesting spouse liable include marital status, economic hardship, knowledge or reason to know, legal obligation, significant benefit, and compliance with income tax laws. *Id.* (citing Rev. Proc. 2000—15, 4.03 (2000)).

As Emma herself noted, the IRS considers "all the facts and circumstances" in determining whether to grant relief. *See id.* (citing Rev. Proc. 2000-15, 2.02); Def.'s Resp. 11. And here, the evidence establishes that the IRS granted Emma innocent spouse relief and relieved her of more than $1 million in tax debt based on Emma's representations in her Form 8857—including Emma's representations that John physically and mentally abused her, *see* Pl.'s App. 193, 197-98, that he

12

left her "financially broke", *see id.* at 199, and that she had no interest in ARTS, the Grand Prairie property, or any property whatsoever. *Id.* at 202, Ex. 22; Def.'s App., Ex. 14.

Plaintiff is thus entitled to summary judgment based on the application of the duty of consistency, and the Court should award it 100 percent of the net proceeds from the sale of the Grand Prairie property. Emma is estopped from claiming an interest superior to that of Plaintiff in ARTS or in the Grand Prairie property. Accordingly, the Court need not reach the parties' other arguments about which state law applies or how Emma's alleged marital property interest in ARTS should be characterized.

Finally, Emma is not entitled to summary judgment on grounds that res judicata bars Plaintiff from challenging the 2024 Florida divorce court judgment awarding Emma a one-half interest in ARTS and the Grand Prairie property. *See* Def.'s Resp. 16; Pl.'s App. 130, Ex. 19. Res judicata bars the litigation of claims that either have been litigated or should have been raised in an earlier suit. *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 395 (5th Cir. 2004) (citing *In re Southmark Corp.*, 163 F.3d 925, 934 (5th Cir. 1999)); *see also Brown v. Felsen*, 442 U.S. 127 (1979) ("Res judicata prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding."). Application of the doctrine res judicata requires that: (1) the parties were identical in the two actions or the non-party's interests were adequately represented by a party to the prior action; (2) the

prior judgment was rendered by a court of competent jurisdiction; (3) there was a final judgment on the merits; and (4) the same cause of action was involved in both cases. *Eubanks v. F.D.I.C.*, 977 F.2d 166, 169–70 (5th Cir. 1992) (citing *Nilsen v. City of Moss Point*, 701 F.2d 556, 559 (5th Cir. 1983) (en banc)). Res judicata does not apply here. Plaintiff was not a party to the Florida divorce case; nor were the interests of the United States adequately represented in that action.

Plaintiff's interests pertain solely to collecting the federal tax debt owed by John. But John did not adequately represent those interests in the Florida divorce case, as he did not assert that Plaintiff had an interest—much less an interest superior to that of any alleged interest Emma may have—in ARTS or the Grand Prairie property. John also was not in a position to adequately represent Plaintiff's interests as he could not enforce Plaintiff's federal tax liens against ARTS or the Grand Prairie property, and he could not assert that Emma would be estopped from claiming any interest in ARTS or the Grand Prairie property based on the duty of consistency with respect to representations in Emma's sworn Form 8857 submitted in support of her request for innocence spouse relief. Thus, the divorce court judgment does not present a res judicata bar to determining Emma's interest, if any, in ARTS or the Grand Prairie property.

## Recommendation

For the reasons stated, the District Judge should find that Plaintiff is entitled to summary judgment, GRANT Plaintiff's Motion for Summary Judgment (ECF No. 107), DENY Defendant's Motion for Summary Judgment (ECF No. 111), and

ORDER that the remaining net proceeds from the sale of the Grand Prairie property—currently held in the registry of the Court—be awarded to Plaintiff.

**SO RECOMMENDED**.

February 25, 2025.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district judge, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).